UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL JAMES BEERS,

                                       Plaintiff,

   v.                                                           10-CV-1554
                                                                                (NAM/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                         Defendant.

_____

PETER M. MARGOLIUS ESQ., for Plaintiff
CHRISTOPHER J. BRACKETT, ESQ., Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

### REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

**I.    PROCEDURAL HISTORY**

On October 2, 2006,[1] plaintiff, then age 47, filed an application for Disability Insurance Benefits (DIB), claiming disability since June 6, 2006—the date he stopped working as a correction officer. (Administrative Transcript (T.) at 21, 27, 28, 44). Plaintiff's application was denied initially on February 20, 2006. (T. 46–49), and he requested a hearing before an Administrative Law Judge (ALJ). (T.

---

[1] The ALJ uses October 2, 2006, as the date plaintiff filed his application for DIB. The court notes that the application filed as part of the record is dated October 6, 2006. (T. 78, 81). Regardless of which date is correct, it does not change the outcome of the court's analysis.

50).  The hearing, at which plaintiff testified, was conducted on November 17, 2008.  (T. 23–43).

In a decision dated February 2, 2009, the ALJ found that plaintiff was not disabled prior to December 1, 2006, but became disabled on that date.  (T. 12–22).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on February 26, 2010.  (T. 1–5).

## II.   ISSUES IN CONTENTION

Plaintiff makes the following claims:

(1) The ALJ failed to list plaintiff's low back pain as an impairment.  (Pl.'s Br. at 1).

(2) The ALJ failed to accord proper weight to the opinion of plaintiff's chiropractor.  (Pl.'s Br. at 1).

(3) The ALJ's finding that plaintiff was capable of performing sedentary work between the date of onset and December 1, 2006, is not supported by substantial evidence.  (Pl.'s Br. at 1).

This court finds, for the reasons below, that the ALJ's decision should be affirmed and plaintiff's complaint dismissed.

## III.   APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 404.1520 (disability insurance benefits) and in 416.920 (SSI) to evaluate both disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps.

3

However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co.*

*v. NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## IV.   ALJ's DECISION

As noted by the ALJ, in order for plaintiff to qualify for DIB, disability must be established before the plaintiff's last insured date. (T. 12). Thus, the ALJ considered whether plaintiff was disabled before December 31, 2010, the date that plaintiff was last insured. *Id.* The ALJ found that plaintiff had not been engaged in substantial gainful activity since the alleged date of onset, and plaintiff had the following severe impairments: "left knee medial compartment arthrosis; and, since December 1, 2006 . . . : bipolar II disorder, (recurrent major depression with hypomanic episode)[,] post-traumatic stress disorder, panic disorder with agoraphobia, obstructive sleep apnea, diagnosed in April 2007[,] and right wrist derangement, diagnosed in 2008." (T. 14). The ALJ also found that plaintiff's musculoskeletal impairments did not result in reflex, motor, or sensory loss, and had not caused the functional loss of use of any extremity. (*Id.*; *See* 20 CFR

404.1520(d)).

The ALJ then found that, prior to December 1, 2006, plaintiff could perform the full range of sedentary work as described in the Social Security Regulations, 20 C.F.R. § 404.1567(b). (T. 14). In making this determination, the ALJ rejected plaintiff's complaints of disabling pain prior to December 1, 2006, as "not credible" to the extent that they were inconsistent with the ability to perform light work. (T. 15).

The ALJ noted medical records from Capital Region Orthopaedic Group, relating to treatment of plaintiff's knee and hip pain in 2005, when Dr. James Schneider noted that plaintiff may need to retire from his job as a correctional officer, as he had achieved maximum medical improvement, but continued to experience pain and limitations. (T. 15–16; *see also* T. 212). The ALJ also considered records from Dr. Kevin McGuire, of the Capital Region Orthopaedic Group, who treated plaintiff's back pain in October 2005 and January 2006. (T. 16). Dr. McGuire noted degenerative changes at L4–5 without evidence of spondylosis or spondylolisthesis. *Id.* The ALJ noted that Dr. McGuire stated plaintiff should be taken out of work for four weeks due to his *subjective* symptoms. *Id.* The ALJ noted that the records indicated that the only further treatment for his back was chiropractic manipulations until plaintiff consulted Dr. Ernest Mincey on March 31, 2008. *Id.*

The ALJ relied on additional records from Capital Region Orthopaedic Group, relating to plaintiff's apparent final visit to see Dr. Schneider in March 2006, when

plaintiff was told that no further treatment could be done for his knee except for a total knee replacement, and that he was too young to have the surgery. (T. 16). The ALJ granted substantial weight to the consultative report of Dr. Philip Gilly, whose diagnosis did not include any impairments involving plaintiff's back. *Id.* Dr. Gilly examined plaintiff on December 1, 2006, and diagnosed plaintiff with "left knee pain, status post open surgery times two, right shoulder pain, status post surgery, right knee pain, diabetes, reactive airway disease, hypertension, and atypical chest pain." (T. 17; *see also* T. 295).

The ALJ did not accord any weight to plaintiff's treating chiropractor, Tamara Graham, D.C., because chiropractors are not recognized as medical experts under Social Security law and regulations, and her findings were not substantiated by any medical doctors. (T. 17–18).

The ALJ relied on the report of plaintiff's psychiatric consultative examiner, Annette Payne, Ph.D., to find that, as of December, 1, 2006, plaintiff's psychiatric impairments prevented him from engaging in substantial gainful work activity. (T. 18). Dr. Payne diagnosed plaintiff with major depression, moderate; posttraumatic stress disorder, moderate; and a chronic pain disorder associated with a psychological and general medical condition. (T. 290). The ALJ also relied on records from Carol Levett, Ph.D., who began treating plaintiff in September 2007. (T. 18). The ALJ accorded controlling weight to Dr. Levett's opinion that due to his psychiatric disability, plaintiff was unable to engage in any physical or non-physical work. (T. 21).

The ALJ found that, as of the alleged onset date of disability, plaintiff was unable to perform past relevant work, and that beginning on December 1, 2006, he has not been able to transfer any job skills to other occupations. (T. 21). The ALJ held that prior to December 1, 2006, plaintiff had the residual functional capacity to perform the full range of sedentary work, and was thus not disabled prior to that date. (T. 22). After December 1, 2006, plaintiff's psychological impairments further limited the range of work plaintiff could perform to the extent that the ALJ found that he was disabled under Social Security Act as of that date. (T. 22).

## V. ANALYSIS

### 1. Residual Functional Capacity

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and *may not simply make conclusory statements regarding a plaintiff's capacities*. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* The RFC assessment must also include a narrative discussion,

describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120, 2010 U.S. Dist. LEXIS 100595, 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling (SSR) 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *7).

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and *not inconsistent with other substantial evidence. See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d). If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is *not* required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the report is rejected. *Id.* An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

Here, the ALJ found that prior to December 1, 2006, plaintiff had the physical capability to perform the full range of sedentary work. (T. 22). Sedentary work requires that the plaintiff be able to lift no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, or small tools. 20 C.F.R. § 416.967 (a).

Plaintiff was treated in January 2005 for a lumbosacral sprain. (T. 154–58). The Progressive Evaluation dated January 12, 2005, states that plaintiff had been seen "consistently over the past month since last progress noted with limited improvements noted [, and plaintiff] acknowledges [that he is] no longer

experiencing any further issues with [lumbosacral sprain], but pain has been constant [in his] right hip . . . ."  (T. 158).  Dr. Schneider noted on July 25, 2005, that the arthritis in plaintiff's knee could force him to retire, as he was no longer able to run.[2]  (T. 212).  X-rays of plaintiff's knees dated July 25, 2005, revealed moderate medial compartment arthrosis in the left knee with some lateral chondrocalcinosis.  (T. 213).

      Plaintiff saw Dr. McGuire on October 13, 2005, complaining of back pain, and Dr. McGuire noted that plaintiff was able to extend his back with significant pain in the paraspinal region on the right side.  (T. 215).  X-rays revealed arthrosis at L4–5, but were otherwise normal, without evidence of spondyloisthesis or spondylosis.  (T. 215–16).  Plaintiff saw Dr. McGuire on January 19, 2006, again complaining of back pain.  (T. 224).  Dr. McGuire took plaintiff out of work for four weeks "because of [plaintiff's] subjective symptoms of significant pain and worsening symptoms, despite physical therapy."  (T. 224).

      Dr. Schneider noted on January 31, 2006, that x-rays showed moderate to severe medial compartment arthrosis with spurring and calcification within the lateral meniscus.  (T. 225).  Dr. Schneider saw plaintiff again on March 17 and 24, 2006, for pain in his left knee, which plaintiff said was still significant.  (T. 217, 218).  Plaintiff saw Dr. Sturges on March 17, 2006, who noted that plaintiff's physical exam was unchanged, and plaintiff was "still experiencing significant pain in his knee."  (T. 217).

---

[2] Plaintiff worked as a New York State correction officer, and running is a job requirement.

Plaintiff testified that he worked until June 6, 2006, and that his work duties included lifting and carrying 10 pounds frequently, lifting over 100 pounds occasionally, and was on his feet most of the day with some sitting, stooping, crouching, kneeling, reaching, handling and writing reports. (T. 28). Plaintiff received treatment for back pain prior to the alleged date of onset, but the record indicates that this pain did not prevent him from working as a NYS correction officer prior to June 6, 2006. Also, as the ALJ noted, after plaintiff saw Dr. Schneider in March 2006 for knee pain, plaintiff received no treatment for his back, other than chiropractic care, until plaintiff saw Dr. Ernest Mincey on March 31, 2008.[3] (T. 16; *see* T. 345–46, 350–51).

Dr. Philip Gilly examined plaintiff on December 1, 2006, as part of a consultative examination, and reported that plaintiff's range of motion in his lumbosacral spine was limited to 40 degrees of anterior flexion, 20 degrees of lateral flexion and rotation, and the straight leg raise was negative for pain bilaterally. (T. 295). Dr. Gilly diagnosed plaintiff with left knee pain, right shoulder pain, right knee pain, diabetes, reactive airway disease, high blood pressure, and atypical chest pain. (T. 295). The ALJ gave substantial weight to Dr. Gilly's opinion that plaintiff was moderately limited for standing, walking, climbing, squatting, and bending, because Dr. Gilly was able to examine plaintiff and obtain a full history. (T. 17, *see*

---

[3] Dr. Mincey opined that he thought plaintiff had "some sort of ongoing disease in the lumbar region" and requested an MRI, but it was not approved, and as of the date of the hearing with the ALJ on November 17, 2008, plaintiff had not had an MRI of his lower back. (T. 423; *see also* T. 29, 38).

*also* T. 296). The ALJ noted that Dr. Gilly did not include sitting, lifting, or carrying in the list of plaintiff's limitations. *Id.*

Plaintiff's treating chiropractor, Dr. Tamara Graham, began treating plaintiff in January 2006. (T. 350). On January 8, 2007, Dr. Graham completed a questionnaire for the New York State Office of Temporary and Disability Assistance, and indicated that plaintiff suffered from chronic low back pain, with palpable spasms along the right lumbar region in the erector spinae muscles. (T. 298). Dr. Graham also indicated that plaintiff could occasionally lift and carry items, but did not specify a particular weight. (T. 300). She also indicated that plaintiff was limited in standing and/or walking to less than 2 hours per day, limited in sitting to less than 6 hours per day, and limited in pushing and/or pulling. (T. 300). Dr. Graham also reported that plaintiff had 25 degrees of lumbar flexion and 15 degrees of lateral lumbar flexion bilaterally. (T. 302).

Dr. Graham completed a Lumbar Spine Impairment Questionnaire dated June 21, 2007, indicating plaintiff's diagnoses were low back pain, subluxation of lumbar spine, lumbosacral radicular syndrome, and subluxation of the sacrum. (T. 352). She also limited plaintiff to 0–1 hours of sitting and 0–1 hours of standing/walking in an eight-hour day, with no lifting or carrying, and indicated that these symptoms and limitations applied as of January 25, 2006. (T. 354–55, 357). These limitations are inconsistent with plaintiff's work history, as he continued to work as a correction officer until June 6, 2006, *and* inconsistent with Dr. Graham's own January 8, 2007, RFC. (*See* T. 28; T. 300).

12

The ALJ gave no weight to Dr. Graham's opinion because chiropractors are not recognized as medical experts under Social Security law and regulations and Dr. Graham's findings that plaintiff had multiple spinal abnormalities were not confirmed by any medical doctors. (T. 18; *see also* 20 C.F.R. §§ 416.913(a),(d)). The Second Circuit has said that "the ALJ has discretion to determine the appropriate weight to accord the [medical source's] opinion based on all the evidence before him." *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995). When analyzing the weight to give medical sources who are not "acceptable medical sources," the ALJ considers (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. 20 C.F.R. § 416.927(d)(1)–(6).

The ALJ appropriately analyzed the opinions and afforded Dr. Graham's opinion no weight because the ALJ found it to be inconsistent with the opinions of recognized medical experts. (*See* T. 18). Consistency is an appropriate factor to consider when evaluating opinion evidence. 20 C.F.R. § 404.1527(d)(4). As noted above, Dr. Gilly, who examined plaintiff in December 2006, did not diagnose plaintiff with any back problems. (*See* T. 295). The ALJ acknowledged that opinions of chiropractors, while not recognized medical experts, can provide insight based on their own observations as to impairments diagnosed by recognized medical experts. (T. 18). But because no medical expert had diagnosed plaintiff with lumbar radiculopathy or subluxation, the ALJ declined to give Dr. Graham's diagnoses any

13

weight. (T. 18). The ALJ's finding that plaintiff was capable of performing the full range of sedentary work was consistent with Dr. Gilly's opinion and the other medical evidence.

The court would also emphasize that it was plaintiff's mental impairments, *not* his physical impairments, that rendered him disabled as of December 1, 2006. (T. 18). Plaintiff apparently does not dispute the absence of any medical evidence of plaintiff's mental impairments prior to December 1, 2006. This further supports the court's conclusion that there was substantial evidence supporting the ALJ's finding that the plaintiff was not disabled prior to December 1, 2006.

### 2.     Pain and Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments could reasonably be expected to produce

14

the pain or other symptoms alleged.  20 C.F.R. § 416.929(b).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.  *Id.* § 416.929 (c)(1).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  *Id.* § 416.929(c)(3)(i)–(vii).

In this case, the ALJ did not doubt that plaintiff's medically determinable impairments could reasonably be expected to cause plaintiff pain, however, the ALJ determined that plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC determination.  (T. 15).  The ALJ is entitled to make credibility determinations as long as she engaged in the proper analysis.  The ALJ concluded, based on the medical evidence supporting his RFC determination, that plaintiffs

statements were not credible "to the extent that they were inconsistent" with the RFC determination. (T. 15–18). As discussed above, the ALJ's RFC determination was supported by substantial evidence. Thus, the ALJ's finding that the pain was not severe enough to preclude plaintiff from performing sedentary work is supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: November 10, 2011

Hon. Andrew T. Baxter
U.S. Magistrate Judge